UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| LIONELL JACKSON | CIVIL ACTION |
| VERSUS | NO: 23-06467 |
| THE CITY OF HAMMOND, LOUISIANA, and CRAIG DUNN | SECTION: T (2) |

## ORDER AND REASONS

Before the Court is a Motion to Stay Pending Resolution of the State Court Criminal Proceedings filed by Defendant Craig Dunn. R. Doc. 42. Defendants City of Hammond, Edwin Bergeron, Jr., Ryan Bergeron, Quinn Bivona, Jacob Cowart, Leonel Gonzales, Christian James, Kristopher Schilling, Matt Wilson, and Chase Zaffuto have also filed a Motion to Stay, R. Doc. 43, adopting the reasoning of Defendant Dunn's Memorandum. Plaintiff Lionell Jackson filed a response in opposition to the Motions. R. Doc. 44. Defendant Dunn filed a reply. R. Doc. 48. For the reasons set forth below, the Court will GRANT the Motions to Stay.

BACKGROUND

Plaintiff has filed suit against the defendants alleging *inter alia* civil rights violations under 42 U.S.C. § 1983 stemming from the execution of a no-knock warrant which resulted in him being shot. R. Doc. 1. According to his Complaint, before dawn on July 15, 2023, a Saturday, Plaintiff was asleep at his residence located at 1509 Natchez lot G. Plaintiff avers he was alone at home in

1

his bedroom when Defendant Dunn and other unidentified Hammond Police officers entered his residence allegedly to serve a no-knock search warrant.

At the time Defendant Dunn and the unidentified officers entered the residence, Plaintiff claims he was not committing any criminal offenses. He was awakened and alerted by the sound of someone walking around in his home, so he sat up to see who it was. He claims he was not armed and did not have anything in either hand, nor did he make any gestures to make it appear as if he had anything in his hands. Defendant Dunn approached the bedroom door, with his weapon trained on Plaintiff but did not say a word.

As Plaintiff attempted to identify the individual pointing a rifle directly at him, Defendant Dunn fired his modified AR-15, hitting Plaintiff in the neck and severely injuring him. Instead of then assisting Plaintiff, Dunn ordered him to the ground and stood over him, watching him bleed out. For some time, Plaintiff asserts, none of the unidentified officers attempted to intervene or assist Plaintiff. Instead, Defendant Dunn stood over him, staring, for a significant period of time before another officer attempted to assist him. Plaintiff contends Dunn was waiting for him to die, but when it appeared that he was not going to die, one of the officers finally intervened. During the radio dispatch to summon emergency assistance, Defendant Dunn failed to tell the operator there was a gunshot victim further delaying emergency help. Plaintiff was transported to the North Oaks Medical Center where he had to undergo emergency surgery and multiple surgeries thereafter. Plaintiff asserts he suffered extreme and severe physical pain, mental and emotional distress, agony, and anxiety as result of being shot and continues to deal with the physical and

psychological trauma of being shot, wrongfully arrested, and detained.

Immediately after the incident, Plaintiff asserts, Chief of Police Edwin Bergeron, Jr. commenced a cover-up for Defendant Dunn, who is a nephew the chief raised as his son. Instead of separating the officers involved in the incident as protocol requires, Chief Bergeron called a meeting with the involved officers to concoct a story so that everyone could be on one accord. The involved officers were not separated at the crime scene and were able to discuss the incident to have consistent stories as to what occurred, Plaintiff claims. To maintain control of the investigation, Chief Bergeron allegedly assigned the investigation to a Hammond police officer, who was not certified to investigate officer-involved shootings, rather than an outside agency. Contrary to any statements made by Chief Bergeron, Plaintiff claims he was not in possession of a gun and did not threaten Defendant Dunn or any other person.

Defendant Dunn and the City of Hammond have answered the Complaint and have provided differing versions of the incident. On July 15, 2023, officers of the Hammond Police Department executed a lawful warrant after daybreak while Plaintiff was in his residence. The officers announced their presence before and during their entry, while Plaintiff allegedly flushed narcotics down a toilet in a bathroom, while he fled down the hallway to a nearby bedroom, and before Officer Dunn entered the bedroom. Plaintiff made no verbal response or any attempt to comply with the officers' commands.

Officer Dunn allegedly feared an ambush may occur due to the evasive, non-compliant actions of Plaintiff and thus entered the pitch-black bedroom on high alert. Upon seeing a dark

3

object in Plaintiff's hand, Officer Dunn fired his gun to protect himself and his team from what he believed to be a weapon. Once Plaintiff dropped the object from his hand onto the ground, officers turned on the lights, immediately rendered first aid, requested an urgent ambulance, and assisted EMS services by waiving them down, loading Plaintiff into the ambulance, escorting the ambulance, and notifying North Oaks an urgent injury was incoming.

Following the execution of the warrant, Plaintiff was charged on November 15, 2023, by Bill of Information with three felonies: (1) violation of La. R.S. § 40:967 relating to production, manufacture, distribution, or dispensing or possession with intent to produce, manufacture, distribute, or dispense, a controlled dangerous substance or controlled substance analogue classified in Schedule II; (2) violation of La. R.S. § 14:95(E) relating to the use, possession, or immediate control of a firearm or dangerous instrumentality while unlawfully in possession of a controlled dangerous substance; and (3) violation of La. R.S. § 14:130.1 relating to obstruction of justice. Plaintiff was arraigned on January 22, 2024, and entered a plea of not guilty to all charges. Pre-trial Motions were fixed for June 2024.

Meanwhile, the Federal Bureau of Investigation (FBI) opened an investigation into Officer Dunn's actions that has included taking statements from involved officers. Upon information and belief, Defendants assert, the FBI has transmitted its investigative report to the United States Attorneys' office for review.

LAW and ANALYSIS

Whether to stay a civil action pending resolution of a parallel criminal prosecution is within

the Court's discretion, which should be exercised when the interests of justice so require. *United States v. Kordel*, 397 U.S. 1, n. 27, 90 S. Ct. 763, 25 L. Ed. 2d 1 (1970). "Although a district court has wide discretion to stay proceedings, its power is not unbounded. … A court must weigh the competing interests when exercising its discretion to issue a stay." *Dominguez v. Hartford Fin. Servs. Group, Inc.*, 530 F. Supp. 2d 902, 905 (S. D. Tex. 2008). The burden rests on the movant to show that special circumstances exist that warrant a stay. *Sec. & Exch. Comm'n v. First Financial*, 659 F.2d 660, 668 (5th Cir. 1981) ("In 'special circumstances,' however, a district court should stay one of the proceedings pending completion of the other to prevent a party from suffering substantial and irreparable prejudice." District courts within the Fifth Circuit consider the following six factors when determining whether a civil action should be stayed due to a parallel criminal matter: (1) the extent to which the issues in the criminal case overlap with those presented in the civil case; (2) the status of the criminal case, including whether the defendant has been indicted; (3) the private interests of the plaintiff in proceeding expeditiously, weighed against the prejudice to the plaintiff caused by the delay; (4) the private interests of and burden on the defendant; (5) the interests of the courts; and (6) the public interest. *See, e.g. Official Comm. of Unsecured Creditors of First NBC Bank Holding Co. v. Ryan*, 2019 U.S. Dist. LEXIS 138946, **5-6 (E.D. La. Aug. 16, 2019) (collecting cases).

     As to the first factor, Defendants have clearly established a concurrent ongoing criminal matter (the charges against Plaintiff) and an open criminal investigation (that of Defendant Dunn), the facts of which appear to overlap with those of the civil case before the Court. The allegations

in the Complaint against Dunn and the FBI investigation of Defendant Dunn's actions are at the very center of the civil rights case brought by Plaintiff. Plaintiff contends the motion for a stay is motivated by a desire to cover up any corruption in the Hammond Police Department. R. Doc. 46. Although Plaintiff asserts Defendant Dunn survived being indicted by a state grand jury, he also suggests there was possible collusion in the formation of that grand jury and its return of a no-true bill. *See* R. Doc. 46, p. 2. At any rate, it seems clear that whether the U.S. Attorney's Office will pursue charges against Defendant Dunn is still unknown.

Which brings us to the second factor: the status of the criminal case, including whether the defendant has been indicted. Plaintiff is charged with various offenses arising directly out of the incident in his home. Defendant Dunn has not yet been indicted but the federal criminal case against him appears to be open and ongoing. Thus, the status of both criminal matters would militate in favor of a stay of the civil case.

The third factor, which requires the Court to consider the interest of the plaintiff in a speedy resolution of the civil action, balanced against the prejudice to the plaintiff caused by the delay, also militates in favor of issuing a stay. While the Court appreciates that Plaintiff has an important interest in proceeding expeditiously and having his claims heard, granting a stay in this matter does not deny him a possible recovery, nor does it significantly impact his ability to pursue his claims once the stay is lifted. Instead, a stay only delays that possible result.

The fourth factor, the private interests of and burden on the defendant in granting a stay, weighs significantly in favor of granting a stay. While Defendant Dunn has not yet been charged

with a crime, he is undeniably under investigation for such. The basis for that investigation lies at the center of Plaintiff's civil rights case and the allegations therein. Although Plaintiff points out that Defendant Dunn has answered the civil suit and given his version of the events, there remains a distinct possibility that Dunn, or one of the other defendants, could be forced to invoke his Fifth Amendment privilege during a contentious discovery. "If the defendant would be burdened by civil discovery on the same issues as a pending criminal case, this factor weighs in favor of a stay." *Hansen v. Thorpe*, No. 18-6203, 2018 U.S. Dist. LEXIS 209183 *7 (E.D. La. Dec. 12, 2018).

Under the fifth factor, the Court considers its own interest in ensuring that justice is done in an efficient and expeditious manner. Certainly, granting a stay will delay this pending case. But the Court "also has a significant interest in seeing that justice is done [in the civil matter] without trampling the constitutional rights of the litigants." *Unsecured Creditors, supra*, 2019 U.S. Dist LEXIS *10.

With respect to the sixth factor, the public interest, the public certainly has "a well-deserved interest in seeing that criminal matters are handled thoroughly and expeditiously, without being compromised by concurrent civil matters." *Unsecured Creditors, supra*, 2019 U.S. Dist LEXIS *10. "The public also has a strong interest in allowing law enforcement officials to perform their jobs, uncover evidence of criminal activity, and bring those persons responsible for criminal activity to justice." *Id.*, **10-11. Here, the Court finds the public interest is well-served by the granting of a stay of the civil matter, while the criminal matter against Plaintiff proceeds and the investigation of Defendant Dunn remains ongoing.

7

Finally, there is an additional basis for the granting of the stay. Plaintiff's § 1983 claims could be barred by the Supreme Court's decision in *Heck v. Humphrey*, 512 U.S. 477, 114 S. Ct. 2364, 129 L. Ed. 2d 383 (1994). In *Heck*, the Supreme Court stated:

> [I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, [footnote omitted] a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. . . . Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated.

*Id.* at 486-87; *see also Jackson v. Vannoy*, 49 F.3d 175, 177 (5th Cir. 1995).

Here, Plaintiff is charged with being in possession of a firearm and obstruction of justice. Plaintiff in his civil suit alleges that he did not possess any weapon when Defendant Dunn shot him. And Defendant Dunn is under investigation for allegedly unlawfully using his weapon. Thus, it is certainly logical that resolution of the criminal matters could and would conflict with resolution of the civil matter. However, it is premature to determine whether *Heck* bars Plaintiff's civil rights claims because courts have generally not extended *Heck*'s holding to a civil rights action where the plaintiff's criminal case has not ended. *See, e.g., Wallace v. Kato*, 549 U.S. 384, 393-94, 127 S. Ct. 1091, 166 L. Ed. 2d 973 (2007) (any claim related to rulings likely to be made in a pending criminal trial should be stayed until the criminal case has ended); *Gates v. Strain*, 885

F.3d 874, 883 (5th Cir. 2018) (reiterating that in accordance with *Heck*, "district courts should stay § 1983 cases that may implicate the validity of pending criminal proceedings until those underlying proceedings have run their course"); *Alonso v. Skinner*, 2024 U.S. Dist. LEXIS 59595, *4-5 (E.D. Texas February 15, 2024).

CONCLUSION

Taking into the consideration the seriousness of granting a stay, and having considered the memoranda and law, including an analysis of the six factors set forth above, the Court finds Defendants have carried their burden of establishing that a stay is warranted in this case.

Accordingly,

**IT IS ORDERED** that the Motions to Stay (R. Docs. 42 and 43) are **GRANTED** and this matter is **STAYED** in its entirety until the state court criminal proceeding against plaintiff is completed and the investigation of Defendant Dunn has been resolved.

**IT IS FURTHER ORDERED** that all motions pending before the undersigned are **DISMISSED WITHOUT PREJUDICE**, reserving to the parties the right to re-urge any motion when the matter is re-opened.

**IT IS FURTHER ORDERED** that the Clerk of Court **CLOSE** the above-captioned civil case for administrative and statistical purposes, pending further orders from the Court. The Court shall retain jurisdiction and the case shall be restored to the trial docket upon motion of a party if circumstances change, so that Plaintiff's claims may be heard to final disposition.

**IT IS FURTHER ORDERED** that Defendants provide this Court with a status report of

the pending criminal matters, including the investigation of Defendant Dunn, every 120 days, commencing from the date of this Order.

New Orleans, Louisiana, this 5th day of February 2025.

                                                        GREG GERARD GUIDRY
                                              UNITED STATES DISTRICT JUDGE